UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

THOMAS RAY, III, )
   a/k/a THOMAS RAY,[1] )
)
   Plaintiff, )   Civil Action No. 15-7-DLB
)
v. )
)   **MEMORANDUM OPINION**
)        **AND ORDER**
MICHELLE, *et al.*, )
)
   Defendants. )

\*\*\*\*  \*\*\*\*  \*\*\*\*  \*\*\*\*

Plaintiff Thomas Ray, III, is an inmate confined by BOP in the United States Penitentiary ("USP")-Coleman II, located in Coleman, Florida. In January 2015, Ray submitted a *pro se* civil rights complaint [R. 1], asserting claims under 42 U.S.C. § 1983 against the Carter County Detention Center ("CCDC") located in Grayson, Kentucky; three CCDC officials; and an unidentified officer employed by the Carter County Sheriff's Office, described only as an "unknown Officer that works at the Jail."[2] Ray alleges that when he was confined in the CCDC as a pre-trial detainee, the defendants

---

[1] The Bureau of Prisons ("BOP") identifies Ray, BOP Register No. 11265-088, as "Thomas Ray," *not* as "Thomas Ray, III." See http://www.bop.gov/inmateloc/ (last visited on June 29, 2015). The Clerk of the Court will therefore be instructed to list "Thomas Ray" as an alias designation for Ray on the CM/ECF cover sheet.

[2] Ray originally filed this action in the United States District Court for the Western District of Kentucky, Louisville Division ("the Western District"). *Thomas Ray, III, v. Nurse Michelle, et al.*, No. 3:15-CV-P56-JGH (W.D. Ky. 2015). At that time, Ray was confined by the BOP in the USP-Allenwood, located in White Deer, Pennsylvania. Ray dated his initiating document "January 5, 2015," *see* R. 1, p. 6, but it was not actually docketed in the Western District until a week later, on January 12, 2015. On February 2, 2015, the Western District transferred Ray's § 1983 action to this district, based on the venue considerations set forth in 28 US.C. § 1391(b); the fact that the CCDC is located in Carter County, Kentucky, which lies within the jurisdiction of this Court; and that a substantial part of the events or omissions giving rise to Ray's claims occurred in this district. [R. 7-9].

violated his constitutional rights by failing to provide him with medical supplies which he required; failing to properly treat his medical condition which required that he wear a catheter; and subjecting him to verbal abuse and offensive racial slurs.

The Court conducts a preliminary review of Ray's § 1983 complaint [R. 1], his amended complaint [R. 17,] and his various supplemental filings, because he has been granted *in forma pauperis* status in this action, *see* R. 10, and because he asserts claims against government officials. 28 U.S.C. §§ 1915(e)(2)(B), 1915A. Because Ray is proceeding without an attorney, the Court liberally construes his claims and accepts his factual allegations as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

The Eighth Amendment of the U.S. Constitution protects prisoners from cruel and unusual punishment, and pretrial detainees are similarly protected under the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution. *Kingsley v. Hendrickson*, ---S. Ct.---, 2015 WL 2473447, at *8 (U.S. June 22, 2015); *Carl v. Muskegon County*, 763 F.3d 592 (6th Cir. 2014); *Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531, 539 (6th Cir. 2008). Because Ray was confined as a pre-trial detainee in the CCDC when the alleged events occurred, his constitutional claims must be analyzed under the Fourteenth Amendment's Due Process Clause.

One of the key issues in this proceeding is whether Ray's § 1983 claims are barred by Kentucky's one-year statute of limitation set forth in Ky. Rev. Stat. § 413.140(1)(a), which applies to both personal injury and § 1983 civil rights actions. In his amended complaint [R. 17], Ray states that he does not know when the alleged events at the CCDC (about which he complains) happened; put another way, he alleges

that he does not know when his constitutional claims against the CCDC defendants arose. However, as explained below, handwritten documents which Ray filed in his West Virginia federal criminal proceeding – of which this Court takes judicial notice – clearly establish that his Fourteenth Amendment claims arose *at the earliest* on March 5, 2013, and certainly by May 1, 2013, and at the latest, on December 19, 2013. Thus, because the last date on which Ray's § 1983 claims could have arisen was December 19, 2013, Ray had until *December 19, 2014*, in which to file suit on his claims. Since Ray did not file this action in the Western District until January 5, 2015, his § 1983 claims are barred by Kentucky's one-year of statute of limitations.

Accordingly, Ray's Fourteenth Amendment claims challenging the sufficiency of the medical treatment which he received as a pre-trial detainee in the CCDC will be dismissed, as they are barred by the applicable one-year statute of limitations. Alternatively, because the Court concludes that under 28 U. S.C. § 1915(e), Ray's Fourteenth Amendment claims against the CCDC defendants fail to state a claim upon which relief can be granted, his claims will also be dismissed for that reason.

**BACKGROUND**

**1. Ray's West Virginia criminal case**

On February 5, 2013, a criminal complaint was filed in federal court in Huntington, West Virginia, charging Ray with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g) and 924(a)(2). *United States v. Thomas Ray, III*, No. 3:13-CR-61-1 (S.D. W. Va. 2013) ("the Federal Case") [R. 1, therein]. The next day, Ray was arrested by federal authorities. [R. 5, therein].

On February 11, 2013, a preliminary/detention hearing was conducted in the Federal Case, the minutes of which reveal that at 14:20:50 p.m., Ray's attorney, Nicholas E. Mayo, had a "Discussion about Defendant's medical problems with the court." [R. 8 therein, p. 2].  On that same date, the West Virginia district court entered an Order finding probable cause to believe that Ray committed the § 922(g) offense charged in the criminal complaint.  [R. 11, therein].  The district court ordered Ray to remain in detention, given his extensive criminal history; the fact that he was on supervised release at the time of his arrest on February 6, 2013; the fact that the offense charged in the criminal complaint was a serious crime involving the possession of a firearm; and the fact that he had no work or family ties to West Virginia, all of which were factors that created a substantial risk of flight.  [*Id.*, pp. 2-3].  On February 26, 2015, Ray was indicted in the Federal Case, charged with two counts of illegal firearm possession in violation of § 922(g).  [R. 13-14, therein].

Ray was arraigned on March 5, 2013, and the minutes of that proceeding reflect that Ray's counsel requested that the Detention Hearing be re-opened "…because of new medical conditions." [R. 16, p. 2; 10:57:09].  On that same date, Ray submitted a handwritten letter in the Federal Case, in which he asked to be released from custody, alleging that he suffered from medical difficulties which required outside treatment.  [R. 17, therein].

On March 7, 2013, the district court re-opened the detention hearing to address Ray's request for release based on his stated medical condition(s). [R. 21, therein].  At the conclusion of the hearing, the district court entered an order finding that Ray's detention in the custody of the United States Marshals Service ("USMS") would

4

continue, pending resolution of the criminal proceeding. [R. 22, therein]. That Order stated as follows:

> After providing Defendant with an opportunity to present his arguments, the Court allowed the Government to respond. **The Government indicated that Defendant's medical concerns were being directly addressed by Deputy Marshal Pursell. The Government also reported that an appointment had been scheduled for Defendant to be examined by a specialist and that, in the meantime, both a nurse and nurse practitioner were available at the detention center and had seen and assisted Defendant**.

[R. 22, therein (emphasis added)].

On May 1, 2013, Ray submitted two handwritten letters [R. 30; R. 31, therein] in the Federal Case, stating that he suffered from serious medical problems; that the staff of the CCDC was not providing him with proper medical treatment; and that the medical treatment which he was receiving at the CCDC was "very unprofessional and dangerous." [R. 30, therein].[3] Ray alleged that he was "…leaking blood and puss from my penis were [sic] the catheter goes in my bladder. I have a burning feeling in my lower back and hips, and latly [sic] for the past month my left side (arm and leg) is numb. And I'm in a lot of pain." [R. 31, p. 1, therein]. Ray further stated that on March 12, 2103, he was taken to the Kings Daughter's Hospital and was examined by a doctor, but he complained that the doctor merely changed his catheter once a month, and that "…the only test they did was a urine dip." [*Id.*] Ray asked the West Virginia district court to enter an order requiring the CCDC to provide him with different and/or better medical treatment, according to his needs and specifications.

---

[3] Carter County, Kentucky, is located in the Northeastern part of Kentucky, on the Kentucky side of the boundary line between Kentucky and West Virginia, and is thus geographically close to Huntington, West Virginia. It appears that Ray was detained as a pre-trial detainee in the CCDC for several months while the Federal Case was pending, because the CCDC is situated in relatively close proximity to the federal courthouse in Huntington, West Virginia.

Ray did not date either of his letters, but both of them were post-marked May 1, 2013, and both of them were docketed in the district court record on May 3, 2013. *See* R. 30, p. 2; R. 31, p. 2, therein. While it appears likely that Ray was confined in the CCDC on March 5, 2013, when he filed his first letter complaining about his medical treatment at the CCDC, it is undisputed that by May 1, 2013, Ray was confined in the CCDC, because he listed the CCDC as his return address on both of the envelopes in which he mailed his letters. [*Id.*] Thus, it is undisputed that on May 1, 2013, Ray was aware of, and complaining about, the allegedly inadequate medical treatment which he was receiving (or as he alleged, which he was *not* receiving) at the CCDC.

On May 9, 2013, the district court entered an Order in which it acknowledged Ray's letter-form motions "…seeking medical care beyond that which he is receiving during his detention." [R. 32, therein]. The district court denied Ray's construed motions, stating:

> It is apparent from his [Ray's] letters that he is under treatment following an examination by a physician at a local hospital. While his disagreement with that treatment is evident from letters, he does not demonstrate a failure to provide reasonable medical care.

[*Id.*]

On November 21, 2013, Ray submitted another letter in the Federal Case, again complaining that he was "…having a hard time getting from the Carter County Jail Staff…" a myriad of supplies, such as male bladder control pads, medical tape and gauze, iodine prep pads or sticks, alcohol prep pads, large bedside catheter bags, pre-loaded syringe with sterile solution, and a catheter cup. [R. 54, therein]. On November 22, 2013, the district court entered an Order directing the USMS to: (1) contact the

6

CCDC to inquire about Ray's allegation that he was being denied necessary medical supplies, and (2) file a written response concerning its findings. [R. 55, therein].

On December 2, 2013, the USMS filed its response [R. 57, therein], supported by a detailed Memorandum from Steven S. Wolf, M.D., Medical Director, Prisoner Operations Division. [*Id.*, p. 2]. Dr. Wolf addressed Ray's medical status and explained, in detail, the specific types and quantities of medical supplies which Ray actually needed to attend to his catheter, and why the CCDC was required to limit Ray's access to, and use of, certain medical supplies. [*Id.*, p. 2]. Dr. Wolf explained that Ray was demanding numerous medical supplies which he did not require to maintain his catheter, and that in one instance, the medical staff at the jail determined that Ray had caused his catheter to become clogged, describing the damage to his catheter as "self-inflicted." [*Id.*] Dr. Wolf explained that the catheter cap had been shoved into the port of the catheter, thus preventing drainage of the urine. [*Id.*] Dr. Wolf concluded, "In summary, it is my conclusion that Mr. Ray is receiving all necessary and proper medical care for his suprapubic catheter at the jail. He is receiving this care under the guidance of a urologist who concurs that the items requested by Mr. Ray are unnecessary." [*Id.*]

On December 2, 2013, the district court entered an Order denying Ray's letter/construed motion seeking judicial intervention into his medical treatment at the CCDC. [R. 58, therein]. Based upon Dr. Wolf's summary, and his medical conclusions supporting the CCDC's restrictions on Ray's access to certain medical supplies, the Court stated that it was "…satisfied that Defendant [Ray] is receiving appropriate medical care…." [*Id.*]

7

On December 9, 2013, Ray pleaded guilty to one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § § 922(g), 924(a)(2). [R. 65; R. 66, therein]. On December 16, 2013, Ray filed a motion seeking "…medical furlough to have much needed medical test and surgery." [R. 67, therein]. Three days later, on December 19, 2013, the district court denied Ray's motion, noting therein Dr. Wolf's recent assessment that Ray was receiving adequate medical care at the CCDC. [R. 69, therein]. The district court further observed that as of the date of entry of its order (December 19, 2013), Ray had since been transported to the Northern Neck Regional Jail (NNRJ) in Warsaw, Virginia, and that the USMS had confirmed that the NNRJ had "…provided medical supplies and treatment in the same manner as was provided at the Carter County Detention Center and that Defendant [Ray] is housed in a medical unit." [*Id.*] That Order establishes that as of December 19, 2013, Ray's confinement in the CCDC had ended.[4]

## 2. Claims asserted in This § 1983 Proceeding and Deficiency Orders Entered in This Proceeding

In his complaint and numerous handwritten supplements thereto, Ray alleges that the CCDC medical staff failed and refused to provide him with either necessary medical supplies and/or proper treatment for his medical condition(s). The claims which he asserts in this § 1983 proceeding are the same medical complaints about the CCDC which he repeatedly asserted in the Federal Case between March 5, 2013, and December 16, 2013.

---

[4] On March 11, 2014, the district court sentenced Ray to serve a 78-month prison term. [R. 72, therein] Ray appealed, but on November 26, 2014, the Fourth Circuit Court of Appeals dismissed part of his appeal and affirmed his conviction. [R. 95, therein].

8

After Ray's § 1983 action was transferred to the Eastern District of Kentucky on February 2, 2015, this Court *immediately* entered a Deficiency Order advising Ray that he had not fully and completely completed the § 1983 complaint form [R. 1] which he had submitted to the Western District; that he would be required to fully complete another standard § 1983 complaint form; and that as part of that process, he would be required to inform the Court of the dates on which each of the alleged events about which he was complaining had occurred.  *See* R.11, p. 2; p. 3, ¶ 2.   Because the BOP had by that time transferred Ray from USP-Allenwood to USP-Coleman, the Court was required to enter two more Deficiency Orders advising Ray of his obligation to fully complete the § 1983 complaint form. [*See* D. E. No. 15, p. 2; p. 4, ¶ 4; D. E. No. 16, pp. 2-3; p. 3, ¶ 2].

On April 2, 2015, Ray submitted a partially completed complaint form [D. E. No. 17], which contains an ambiguous response to the specific question asking him to identify the dates on which the alleged events involving the defendants took place.  Ray responds:

> I don't have the dates of these things that happened 2 me because of my legal papers being taken from me while I was transferred from Huntington WV US District courthouse 2 NNRJ and my attorney lex Coleman did not send me all of my legal papers home for me as he said he would. So that's why I don't have dates.

[R. 17, p. 3].

Ray seeks $2 million in damages to compensate him for the alleged violations of his Fourteenth Amendment rights stemming from his confinement in the CCDC.  [*Id.*, p. 8].  Ray also demands an investigation into the medical operations at the CCDC.  [*Id.*]

9

**DISCUSSION**

In this § 1983 proceeding, Ray alleges that while he was confined in the CCDC, three officials at that facility denied him medical treatment and medical supplies on various occasions, and subjected him to verbal harassment, in violation of his constitutional rights. [R. 1-1, pp. 1-3; R. 17]  Ray also alleges that an unidentified officer employed by the Carter County Sheriff's office refused to become involved in his (Ray's) complaints about the manner in which the CCDC was addressing his medical demands. [R. 1-1. p. 1].

When Ray was asked, in the § 1983 complaint form, to identify when the alleged events at the CCDC occurred, he stated that he could not recall the dates.  [R. 17, p. 8]. The Court must accept as true Ray's assertion that he cannot recall even the approximate dates on which the CCDC defendants allegedly violated his constitutional rights, but other publically available information filed in the Federal Case – consisting of Ray's own handwritten letters and the resulting Court orders – answers that question. The documents filed in the Federal Case, of which this Court takes judicial notice, are intricately related to the claims which Ray asserts in this § 1983 proceeding, and conclusively establish that Ray's various medical claims against the CCDC defendants arose (accrued) as early as March 5, 2013, but certainly by May 1, 2013, and at the very latest, on December 19, 2013.

Title 42 U.S.C. § 1983 does not provide its own statute of limitations, so federal courts must "borrow" the applicable limitations period from the state where the events occurred.  *Owens v. Okure*, 488 U.S. 235, 249-50 (1989); *Wilson v. Garcia*, 471 U.S. 261, 276-79 (1985).   For constitutional torts committed in Kentucky, the one-year

limitation period set forth in Ky. Rev. Stat. § 413.140(1)(a) applies to civil rights actions brought under § 1983. *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 181-82 (6th Cir. 1990).

Federal law governs when the statute of limitations begins to run. *Wilson*, 471 U.S. at 267; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). A cause of action accrues when "... the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." *Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991); *see also Sevier*, 742 F.2d at 273; *Dixon v. Clem*, 492 F.3d 665, 671 (6th Cir. 2007). To determine when a § 1983 cause of action accrues, a district court must examine what event(s) should have alerted the typical lay person to protect his or her rights. *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015).

Here, as early as March 5, 2013, Ray was complaining in the Federal Case about the medical treatment he was receiving at the jail where he was confined, although he did not identify that facility by name. However, in his two letters of May 1, 2013, he *specifically* complained about the quality of the medical treatment he was receiving *at the CCDC*. The last letter which Ray filed in the Federal Case, in which he complained about the quality of medical care that he was receiving at the CCDC, and about the alleged restrictions on his access to medical supplies, was dated December 16, 2013. By December 19, 2013, just three days later, Ray had been transferred from the CCDC to a jail in West Virginia.

The records of the Federal Case therefore conclusively establish that Ray's claims against the CCDC and its officials arose as early as March 5, 2013, but *certainly*

11

by May 1, 2013, and that the very *last* date on which Ray's various constitutional claims against the CCDC defendants could have accrued was December 19, 2013, because by that date, Ray had been transferred from the CCDC to the Northern Neck Regional Jail in Warsaw, Virginia. Therefore, Ray was required to have filed this § 1983 action on or before December 19, *2014*, but he did not file this action until January 5, 2015 (notwithstanding the actual docketing date of January 12, 2015), some three weeks past the expiration of the one-year statute of limitations period set forth in Ky. Rev. Stat. § 413.140(1)(a). Given that fact, Ray's Fourteenth Amendment deliberate indifference and other constitutional claims against the CCDC defendants must be dismissed because they are barred by the applicable one-year statute of limitations. But even liberally assuming that Ray's claims are not time-barred, they suffer from another fatal defect: they lack substantive merit.

Since 1972, the law has been established that pre-trial detainees are entitled to medical attention. *In Estate of Carter*, 408 F.3d at 305, 313 (6th Cir. 2005) ("'where the circumstances are clearly sufficient to indicate the need of medical attention for injury or illness, the denial of such aid constitutes the deprivation of constitutional due process.'" (quoting *Fitzke v. Shappell*, 468 F.2d 1072, 1076 (6th Cir. 1972))); *see also Estate of Owensby v. City of Cincinnati*, 414 F.3d 596, 604 (6th Cir. 2005) ("[T]he Fourteenth Amendment right of pretrial detainees to adequate medical care is, and has long been, clearly established."). A pretrial detainee's rights under the Eighth and Fourteenth Amendments are denied by deliberate indifference to his serious medical needs just as such indifference denies the corresponding rights of a convicted prisoner. *Molton v. City of Cleveland*, 839 F.2d 240 (6th Cir. 1988) (citing *Anderson v. City of Atlanta*, 778

12

F.2d 678, 686-87 n.12 (11th Cir. 1985); *Garcia v. Salt Lake County*, 768 F.2d 303, 307 (10th Cir. 1985)).

However, the numerous orders entered in the Federal Case reflect that Ray was denied neither medical treatment nor necessary medical supplies while he was confined in the CCDC between March 5, 2013 (or, at least by May 1, 2013), and December 16, 2013. Those orders, combined with Dr. Wolf's comprehensive November 27, 2013, medical report, reveal that Ray received both ongoing and proper medical treatment **and** all necessary medical supplies during that several month time-period in 2013. Each time that Ray complained in the Federal Case about his medical treatment at the CCDC, the district court promptly investigated his claims, but determined on every occasion that the CCDC was properly meeting Ray's medical needs. Ray now challenges the sufficiency and adequacy of the medical treatment which he received at the CCDC, but a difference in opinion between a prisoner and the medical staff about treatment does not state a cause of action. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Ray's Fourteenth Amendment claims in this § 1983 action, which challenge merely the extent and sufficiency of the medical treatment which he received at the CCDC, therefore fail to state a claim upon which relief can be granted, and will be dismissed with prejudice.

Finally to the extent that Ray alleged that the CCDC defendants used an offensive racial slur, he states no constitutional claim. An allegation that a prison official used a racially offensive term or language is insufficient to state a constitutional violation, even if the allegation is true, and even though the alleged conduct may have been shameful and utterly unprofessional. "Not every unpleasant experience a prisoner

13

might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987).

Harassment and verbal abuse do not constitute the type of infliction of pain that the U.S. Constitution prohibits. *Id.* Even the occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude. *Young v. Ward*, 149 F.3d 1185, 1998 WL 384564, at *1 (6th Cir. June 18, 1998) (citing *Torres v. County of Oakland*, 758 F.2d 147, 152 (6th Cir. 1985)). Ray's allegation challenging the alleged use of a racial slur at the CCDC therefore fails to state a claim upon which relief can be granted, and will be dismissed.

## CONCLUSION

Accordingly, the Court being duly advised, **IT IS ORDERED** as follows:

1. The Clerk of the Court shall list, on the CM/ECF cover sheet, "Thomas Ray" as an alias designation for Plaintiff Thomas Ray, III.

2. Ray's 42 U.S.C. § 1983 complaint [R. 1] and his amended complaint [R. 17], as supplemented at R. 13 and R. 18, are **DISMISSED WITH PREJUDICE**.

3. Judgment will be entered contemporaneously with this Memorandum Opinion and Order in favor of the Defendants.

This 2nd day of July, 2015.



Signed By:
*David L. Bunning*
United States District Judge

G:\DATA\ORDERS\ProSe\Ray 15-7-DLB Dism 1983 CKS.doc